IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

GRANT LONG                                                                                    PLAINTIFF

v.                                           Case No. 2:19-cv-00061-LPR

DARREN D. SMITH, SR., individually
and in his official capacity as a Forrest City
Police Officer; &
THE CITY OF FORREST CITY, ARKANSAS                                   DEFENDANTS

## ORDER

     This case is principally about alleged retaliation for protected speech.  Grant Long says

that Officer Darren D. Smith (a former police officer for Forrest City, Arkansas) filed an Affidavit

of Arrest that contained numerous false statements about Mr. Long.  Mr. Long says Officer Smith

did this because Mr. Long sued and publicly criticized him.  Mr. Long says that the false statements

in the Affidavit of Arrest eventually led to the improper prosecution of Mr. Long.

     Mr. Long sues Officer Smith and Forrest City, Arkansas, under 42 U.S.C. § 1983, alleging

First Amendment retaliation and Fourth Amendment violations.[1]  Mr. Long also sues Defendants

under Arkansas state law, alleging a violation of the Arkansas Constitution, malicious prosecution,

and abuse of process.[2]

---

[1]  Compl. (Doc. 1) ¶ 1.  This case originally had an additional Plaintiff, Arsenio Clinton.  On March 12, 2020, Mr. Clinton moved to nonsuit his case.  Mot. for Nonsuit (Doc. 14).  The Court granted the Motion.  Order (Doc. 17).  Mr. Long is now the only Plaintiff in this case.

[2]  Compl. (Doc. 1) ¶ 1.  The Complaint includes vague and general language that, read uncritically, could suggest Mr. Long is trying to make out claims for assault and battery as well.  However, such language appears to be nothing more than an artifact of the now-dismissed claims that were being litigated by Arsenio Clinton.  *See supra* note 1.  Mr. Long's counsel concedes that Mr. Long does not have a viable claim for assault or for battery.  Dec. 3, 2021 Hr'g Tr. at 68.  That's a wise concession.  Under Arkansas law, assault is "an intentional attempt by a person, by force or violence, to do an injury to the person of another, or . . . any attempt to commit a battery, or any threatening gesture showing in itself or by words accompanying it an immediate intention, coupled with a present ability, to commit a battery." *Costner v. Adams*, 82 Ark. App. 148, 156, 121 S.W.3d 164, 170 (2003).  And battery is "a wrongful or offensive physical contact with another through the intentional contact by the tortfeasor and without the consent of the victim, [or] the unpermitted application of trauma by one person upon the body of another person." *Id.*, 121 S.W.3d at 170.  The Complaint (and the record) is simply devoid of any indication that any Defendant threatened violence upon Mr. Long, let alone wrongfully or offensively made (or attempted to

Defendants seek summary judgment.[3]  They primarily argue that (1) probable cause existed to charge Mr. Long with a crime, and (2) the existence of probable cause is fatal to almost all of Mr. Long's claims.[4]  For the reasons that follow, the Court GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment.

## Background[5]

Plaintiff Grant Long has lived in Forrest City, Arkansas, for over a decade.[6]  Defendant Officer Smith worked for the Forrest City Police Department from 2014 until April 2019.[7]  Mr. Long and his family have had more than one run-in with Officer Smith during their mutual time in Forrest City.

On May 15, 2016, Derrick Long (Grant Long's nephew) filed a personnel complaint against Officer Smith.[8]  Derrick Long accused Officer Smith of unlawfully entering Derrick Long's house, taking his dog, and stealing $900.[9]  In response to this personnel complaint, the Forrest City Police Department conducted an Internal Affairs investigation.[10]  During the investigation, Officer Smith told investigators that his bodycam would show that he never ventured

---

make) physical contact with him.

[3]  Defs.' Mot. for Summ. J. (Doc. 52).

[4]  *See* Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 53) at 3–8.

[5]  On summary judgment, the Court recites the genuinely disputed facts in a light most favorable to the Plaintiff, including giving the Plaintiff all reasonable inferences from the facts.  *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016).  Of course, the Court also relies on undisputed facts.  Essentially, the Court considers the most pro-plaintiff version of the facts that a rational juror could find on this record.  Accordingly, the Court's factual recitation is only good for the summary judgment motion.

[6]  Long Dep. (Doc. 79) at 8:9–12.

[7]  Pl.'s Resp. to Defs.' Statement of Facts (Doc. 66) ¶ 2.

[8]  Ex. 3 to Pl.'s Resp. to Defs.' Mot. for Summ. J. (Under Seal) at 2; Long Dep. (Doc. 79) at 62:14–16.

[9]  Ex. 3 to Pl.'s Resp. to Defs.' Mot. for Summ. J. (Under Seal) at 2.

[10]  *See id.* at 15 (letter informing Officer Smith that he was the subject of an Internal Affairs investigation).

beyond the doorway of Derrick Long's home.[11]   Officer Smith also said that he never took the

dog.[12]

On June 3, 2016, the Internal Affairs investigator informed Officer Smith that a complete

review of the investigation resulted in a "finding of true."[13]   That is, Derrick Long's complaint

about Officer Smith's conduct was confirmed as being accurate.[14]   A June 6, 2016 letter from

Forrest City Police Department Lieutenant E.P. Reynolds to Forrest City Police Chief Deon Lee

recounts the findings of the investigation.[15]

### FORREST CITY POLICE DEPARTMENT

. . .

**To:** **D. Lee, Chief of Police**
**From:** **E.P. Reynolds, Lieutenant**
**Re:** **IA Investigation (Officer D. Smith)**
**Date:** **06/06/2016**

Dear Sir,

On May 23, 2016, you ordered an Internal Affairs (IA) investigation into a citizen's allegations against Officer Darren Smith.  These allegations were against Officer Smith for reportedly entering into the citizen's home unlawfully and furthermore, unlawfully seizing and removing the citizen's dog.  The citizen also complained that Officer Smith had stolen money from his home as well as damaging a dog cage/kennel in the process.  A thorough investigation found that there was *NO* probable cause (P/C) to enter the citizen's home nor was there (P/C) to seize and remove the dog from the owner's home.  The IA investigation found Officer Smith to be in direct violation of the 4th Amendment of the US Constitution (which prohibits unlawful search & seizure).  Consequently, Officer Smith was also found to be in violation of Forrest City Police Department Policy ***DR-105 Adherence to Law***, which clearly states a member of FCPD must act in accord with the US Constitution as well as obey applicable local and state laws.

---

[11]  *Id.* at 8.

[12]  *Id.*

[13]  *Id.* at 22.

[14]  *Id.*

[15]  *Id.* at 1.

Clearly, these violations mark yet another recent example of poor judgment on the part of Officer Smith with regard to his conduct and job performance.  There would appear to be a pattern of behavior from Officer Smith that would place our department in jeopardy of increased liability issues.

Officer Smith is currently serving a ninety-day period of demotion from his Sergeant position.  This demotion is the resulting discipline from another previous IA investigation against Smith.

The results of this most recent IA investigation (coupled with previous IA investigations) substantiate not only clear violations of department protocol by Officer Smith; but demonstrate an obvious pattern of questionable behavior and conduct on the part of Officer Smith.

It is my assessment that the aforementioned facts give the administration no other viable alternative but to consider Officer Smith's termination as the most appropriate course of action.[16]

Officer Smith was not terminated.

After this incident, Grant Long (our Plaintiff) sent a Freedom of Information Act request to the Forrest City Police Department.[17]  Mr. Long sought "copies of the file on [the] arrest of Derrick Long," including "any complaints that [were] filed on Smith for going into Derrick Long's home and taking his dog . . . ."[18]  On February 1, 2017, Chief Lee or his secretary, Chastity Boyd, gave Mr. Long multiple documents in response to this request, including "the whole [Internal Affairs] investigation," and a CD that was made during the investigation.[19]  Mr. Long received Lt. Reynolds's letter (the "Internal Affairs Investigation Letter") as well.[20]

On January 8, 2018, Mr. Long filed a *pro se* federal lawsuit against Forrest City, Officer Smith, and numerous other city officials.[21]  Mr. Long's complaint made multiple allegations

---

[16]  *Id.*  Mr. Long filed this exhibit under seal.  But this exhibit has been filed publicly in a previous lawsuit. The exhibit is thus already in the public record and should not be under seal.

[17]  Long Dep. (Doc. 79) at 21:13–22.

[18]  *Id.* at 21:18–22:1.

[19]  *Id.* at 23:7–21, 24:11–22, 59:10–21; Chief Lee Dep. (Doc. 80) at 26:9–25.

[20]  Long Dep. (Doc. 79) at 60:12–19.

[21]  *Long v. City of Forrest City et al.*, Case No. 2:18-cv-00005-JLH (Doc. 2) *(Long I)*.  At the summary judgment

against Officer Smith.[22]  Specifically, Mr. Long alleged that Officer Smith (1) was corrupt and abused his position, (2) lied under oath during an internal affairs investigation, (3) refused to serve an arrest warrant issued for his own daughter despite the fact that he saw her on a daily basis, (4) "profiles and targets different individuals for different reasons," (5) said that, "if Grant Long keep messing with me, I am going to put his ass in jail," (6) brandished his weapon, while off duty, in a crowded store for no reason, and (7) harassed Mr. Long regarding where Mr. Long could park his truck and trailer.[23]  Mr. Long also specifically referenced the conclusions in the Internal Affairs Investigation Letter.[24]

Mr. Long attached to his 2018 complaint three documents allegedly related to Officer Smith.[25]  One document was the Internal Affairs Investigation Letter.[26]  The second document was an Affidavit of Arrest (filed by an Officer Vanessa Brayboy) targeted at a person that Mr. Long alleged was Officer Smith's daughter.[27]  The affidavit stated that Officer Smith's daughter made a threatening Facebook post regarding Officer Brayboy and her husband.[28]  Officer Brayboy swore that probable cause existed to arrest Officer Smith's daughter for terroristic threatening based on

---

hearing in the instant case, no party objected to this Court taking judicial notice of the filings in *Long I* under Rule 201 of the Federal Rules of Evidence.  Dec. 3, 2021 Hr'g Tr. at 43, 54–55, 87.  The Court takes judicial notice of the filings in that case.

[22]  *Long I* (Doc. 2) at 3–4, 7–11.

[23]  *Id.* at 4–11.

[24]  *Id.* at 4.

[25]  *Id.* at 30–31.

[26]  *Id.* at 30.

[27]  *Id.* at 32; *see also id.* at 9 (Mr. Long alleging that the person named on the Affidavit of Arrest is Officer Smith's daughter).

[28]  *Id.*

the post.[29]  The third document appears to be an arrest warrant that commanded the arrest of Officer

Smith's daughter for terroristic threatening.[30]

On March 7, 2018, Magistrate Judge Joe J. Volpe recommended that Mr. Long's complaint

be dismissed without prejudice.[31]  Judge Volpe noted that, in a previous Order, he had offered Mr.

Long the opportunity to file an amended complaint to clear up the fact that Mr. Long's claims

"were little more than a list of names and allegations that largely did not indicate any personal

connection, much less harm, to him."[32]  Because Mr. Long did not file an amended complaint,

Judge Volpe recommended that Mr. Long's complaint be dismissed.[33]  On March 29, 2021,

District Judge J. Leon Holmes approved and adopted Judge Volpe's recommendation in its entirety

and dismissed Mr. Long's case without prejudice.[34]

The 2018 lawsuit was not the only source of strife between Mr. Long and Officer Smith.

At some point, Mr. Long obtained (from Officer Brayboy) a video involving Officer Smith.[35]  The

video shows footage of a traffic stop conducted by Officers Smith and Brayboy.[36]  The video picks

up when Officer Smith is administering a portable breathalyzer test to a driver suspected of DWI.[37]

Officer Smith has the driver provide multiple breath samples because the driver kept failing to

---

[29]  *Id.*

[30]  *Id.* at 31.

[31]  *Long I* (Doc. 5).

[32]  *Id.* at 2.

[33]  *Id.* at 3.

[34]  *Long I* (Doc. 6); *see also Long I* (Doc. 7) (Judgment).  In addition to proceeding *pro se*, Mr. Long also proceeded *in forma pauperis*.  *Long I* (Doc. 1).  When a *pro se* plaintiff proceeds *in forma pauperis*, a district court is allowed to conduct a pre-service screening of a complaint to see if it is legally sufficient.  *See Key v. Does*, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016) (recognizing that district courts have the power under 28 U.S.C. § 1915(e)(2)(B) to screen and dismiss complaints filed by plaintiffs—prisoners and non-prisoners—proceeding *in forma pauperis*).  That is what Judge Holmes did in *Long I*.  Thus, Mr. Long's complaint was dismissed before any defendants were served with process.

[35]  Pl.'s Resp. to Defs.' Statement of Facts (Doc. 66) ¶ 6.

[36]  *Id.* ¶ 7; Ex. 6 to Defs.' Statement of Facts (Doc. 54-6).

[37]  Ex. 6 to Defs.' Statement of Facts (Doc. 54-6) at 00:01–06.

provide a measurable sample.[38]   Officer Smith eventually gets a reading on the breathalyzer device.[39]  If the video is stopped at just the right moment, the breathalyzer device shows that the driver's blood-alcohol content was 0.046.[40]  Under Arkansas law, a blood-alcohol content under 0.04 gives rise to a presumption of no intoxication, and a blood-alcohol content above 0.08 is dispositive proof of intoxication.[41]  In the middle range, 0.04–0.08, while no presumption arises, the blood-alcohol content "may be considered with other . . . evidence in determining" whether the driver was intoxicated.[42]  After Officer Smith sees the 0.046, he tells the driver to "quit beating in that truck."[43]  Officer Smith then tells the driver that the driver was "drinking with a CDL."[44] Before ultimately letting the driver go, Officer Smith says, "you know I catch you dirty again what time it is, don't you."[45]

There's more to the video than just the stop itself.  The video is captured by a bodycam.[46] The timestamp information on the video indicates that the bodycam was assigned to Officer Brayboy.[47]  But it is clear that Officer Smith was in fact the person wearing Officer Brayboy's

---

[38]  *Id.* at 00:03–01:00.

[39]  *Id.* at 01:01–01:13.

[40]  *Id.* at 01:11.  Mr. Long appears to deny that the number can be seen on the video.  Pl.'s Resp. to Defs.' Statement of Facts (Doc. 66) ¶ 13.  But Mr. Long concedes that he admitted in his deposition that the readout could be seen on the video.  *Id.* ¶ 16.  In his deposition, Mr. Long said that the "breathalyzer machine was counting down.  That's how you seen the 42."  Long Dep. (Doc. 79) at 30:15–25.  It appears Mr. Long is suggesting that the 42 (or 46) is not a blood-alcohol content reading.  The video is the best evidence and it clearly shows the readout.  This is not a genuine dispute of fact.  A rational juror could only conclude that the readout shows a 0.46 blood-alcohol content.

[41]  *See* Ark. Code Ann. § 5-65-206 (a)(1) (stating that "[i]t is presumed at the trial of" a person charged with DWI "that the person was not intoxicated" if the person's blood-alcohol content is .04 or less); *id.* § 5-65-103(a)(2) (stating that it is unlawful for a person to operate a motor vehicle if that person's blood-alcohol content is .08 or greater).

[42]  *Id.* § 5-65-206(a)(2).

[43]  Ex. 6 to Defs.' Statement of Facts (Doc. 54-6) at 01:16.

[44]  *Id.* at 01:16–01:23.

[45]  *Id.* at 01:36–01:43.

[46]  *Id.*

[47]  *Id.*  The timestamp on the video reads "VBRAY_BOY421."

bodycam for a majority of the traffic stop.[48]  On the video, after the traffic stop ends, Officer Smith

removes Officer Brayboy's bodycam from his own shirt and hands it back to Officer Brayboy.[49]

Seconds later, Officer Smith removes a bodycam from Officer Brayboy's shirt.[50]  Officer Smith

can then be seen manipulating the bodycam previously worn by Officer Brayboy.[51]  Moments

later, Officer Brayboy attaches her assigned bodycam (the one Officer Smith had been wearing)

to her front-shirt pocket.[52]

On March 23, 2018, Mr. Long posted the video on Facebook.[53]  Above the link to the

video, Mr. Long wrote, "Look at the work we pay for just touch the link to play it."[54]  Below the

link, Mr. Long wrote, "SMITH LETS A DIRTY DWI DRIVER GO."[55]  Subsequent to posting the

video, Mr. Long also posted a comment in the comments section.[56]  That comment read, "But Eric

said it clear[ly] show the point level but he couldn't say why the officer deleted the video in the

street but this is an officer who say he is missing a whole mo[n]th of video."[57]

---

[48]  *Id.* at 00:00–01:45.

[49]  *Id.* at 01:45.

[50]  *Id.* at 01:47.

[51]  *Id.* at 01:52–01:56.

[52]  *Id.* at 01:57.  The record contains no footage of this stop captured by Officer Smith's bodycam.

[53]  Pl.'s Resp. to Defs.' Statement of Facts (Doc. 66) ¶ 7; Ex. 5 to Defs.' Statement of Facts (Doc. 54-5).

[54]  Ex. 5 to Defs.' Statement of Facts (Doc. 54-5).

[55]  Pl.'s Resp. to Defs.' Statement of Facts (Doc. 66) ¶ 7; Ex. 5 to Defs.' Statement of Facts (Doc. 54-5).

[56]  Ex. 5 to Defs.' Statement of Facts (Doc. 54-5).

[57]  *Id.*



Mr. Long was not done criticizing Officer Smith.  On March 26, 2018, just three days later, Mr. Long posted a copy of the Internal Affairs Investigation Letter on Facebook.[59]  Both the video post and the Internal Affairs Investigation Letter post appear to have been made to a Facebook group, Let's Talk Forrest City.[60]  Officer Smith was a member of that Facebook group.[61]  There's no record evidence that Mr. Long knew Officer Smith was a member of this Facebook group.

---

[58]  *Id.*

[59]  Smith Dep. (Doc. 78) at 16:25–18:3, 23:8–9 (Officer Smith discussing the Internal Affairs Investigation Letter).

[60]  Ex. 10 to Defs.' Statement of Facts (Doc. 54-10) at 2; Smith Dep. (Doc. 78) at 16:25–18:3.

[61]  Smith Dep. (Doc. 78) at 18:1–3.

The very next day, Officer Smith drafted and filed an Affidavit of Arrest.[62]  Because of its central importance to the claims brought by Mr. Long, the Court reproduces Officer Smith's Affidavit of Arrest in relevant part.

> Monday, March 26, 2018, at approximately 11:11 PM, Grant Long posted a document related to a personnel matter at the Forrest City Police Department referencing the opinion of a former disgruntled employee regarding Darren Smith. The opinion was weighed, refuted, and no action was taken in reference to the recommendation by said former disgruntled employee.  Mr. Grant Long sought the document by a Freedom of Information Act request; however[,] said request was denied due to the record being classified as a personnel record as defined in the statute.  Said document did not formulate the basis for a suspension or demotion and therefore could not be released because it was determined to be an unwarranted invasion of the privacy of Darren Smith.
>
> Subsequently[,] Grant Long conspired with others to steal the document.  On January 8, 2018, Grant Long filed a complaint in the federal court system, case #2:2018cv00005.  This complaint has not been properly served on the listed defendants, and in some cases the defendant is deceased.  Improperly attached to the complaint was the aforementioned document, thus proving Grant Long is in possession of the stolen property.
>
> **Arkansas State Statu[t]e 5-36-106** defines **Theft by receiving** as a person knowing that the property was stolen; or having good reason to believe that the property was stolen.  There are also multiple factors that give rise to a presumption that a person knows or believes that the property was stolen; in this case specifically the unexplained possession or control by the person of recently stolen property.
>
> Grant Long has continually made false statements about Darren Smith on a public for[u]m Facebook; Let's Talk Forrest City.  He has accused me falsely of letting a drunk driver continue to operate a motor vehicle after having conducted tests that show the driver was intoxicated.  On the same forum[,] he also public[ly] accused me of destroying evidence related to such.  Mr. Long knew when he posted such that he was posting falsehoods and that the information he was providing was not true.
>
> **Arkansas State Statu[t]e 5-71-209** defines **Harassing communications** as communicating with a person, anonymously or otherwise, by telephone, telegraph, mail, email, message delivered to an electronic device (Computer, Cell Phone, ETC,) or any other form of written or electronic communication in a manner likely to harass, annoy, or cause alarm.  Mr. Long had full knowledge that I was a Forrest City Police Office[r] at the time of the posts and posted the items and a false claim

---

[62]  Ex. 10 to Defs.' Statement of Facts (Doc. 54-10) at 2–3.

in an effort to annoy, cause alarm, embarrass and in a manner that was indicative of his malice towards me.

**Arkansas State Statu[t]e 5-71-208** defines **Harassment** as engaging in conduct or repeatedly committing an act that alarms or seriously annoys another person and that serves no legitimate purpose.  Mr. Long had full knowledge that I was a Forrest City Police Office[r] at the time of the posts and engaged in conduct that annoyed me and continues to do so, and his actions serve no legitimate purpose and Grant Long did so in a manner that was indicative of his malice towards me.

I am also asking for a no contact order, instructing Grant Long to cease and desist his current course of actions.  I am also asking that consideration be given to my contact with him in [the] course of my duties as a Forrest City Police Officer in case of calls for service or violation of the law in which Mr. Long may or may not commit.[63]

On the same day (March 27, 2018), the St. Francis County District Court relied on the Affidavit of Arrest to find probable cause to arrest Mr. Long.[64]  The district court issued a Warrant of Arrest, directing law enforcement to arrest Mr. Long for the following offenses: harassing communications, harassment, and theft by receiving.[65]

The record does not show that any action was taken based on the Warrant of Arrest between March 27, 2018, and August 26, 2018.  Then, by happenstance, there was an interaction between Mr. Long and the police.  On August 27, 2018, Mr. Long contacted the Forrest City Police Department to report "that his truck had been broken into and vandalized . . . ."[66]  Officer Deborah Dowdy responded to the scene.[67]  During Officer Dowdy's visit with Mr. Long, Officer Dowdy received a phone call indicating that Mr. Long had an outstanding warrant.[68]  Officer Dowdy

---

[63]   Ex. 10 to Defs.' Statement of Facts (Doc. 54-10) at 2–3.

[64]   Pl.'s Resp. to Defs.' Statement of Facts (Doc. 66) ¶ 22.

[65]   *Id.* ¶ 23; Ex. 10 to Defs.' Statement of Facts (Doc. 54-10) at 1.

[66]   Pl.'s Resp. to Defs.' Statement of Facts (Doc. 66) ¶ 24.

[67]   *Id.* ¶ 25.

[68]   Long Dep. (Doc. 79) at 39:19–23.  The record does not reveal who called Officer Dowdy.

informed Mr. Long of the Warrant of Arrest and the charges against him.[69]  Officer Dowdy served

the Warrant of Arrest and gave Mr. Long a card indicating a court date related to the charges.[70]

Officer Dowdy did not handcuff or in any way detain Mr. Long.[71]

On September 28, 2018, Mr. Long appeared for his first court date.[72]  Mr. Long's criminal

trial was then scheduled for November 13, 2018.[73]  The day before trial, Mr. Long got a lawyer.[74]

Officer Smith testified at trial.[75]  He cannot, however, recall what he said at trial.[76]  Mr. Long was

acquitted on all three charges—harassing communications, harassment, and theft-by receiving.[77]

Mr. Long paid his lawyer $500.00 for the representation.[78]

## Discussion

A court shall grant summary judgment when there is no genuine dispute as to any material

fact and the moving party is entitled to judgment as a matter of law.[79]  The moving party has the

burden to show that (1) there is an absence of a genuine dispute of material fact on at least one

essential element of the nonmoving party's case, and (2) the absence means that a rational juror

could not possibly find for the nonmoving party on that essential element of the nonmoving party's

---

[69]  Pl.'s Resp. to Defs.' Statement of Facts (Doc. 66) ¶ 26.

[70]  *Id.* (Doc. 66) ¶ 27; Long Dep. (Doc. 79) at 40:1–2; Ex. 10 to Defs.' Statement of Facts (Doc. 54-10) at 1.

[71]  Pl.'s Resp. to Defs.' Statement of Facts (Doc. 66) ¶ 28; Long Dep. (Doc. 79) at 40:13–41:2.

[72]  Long Dep. (Doc. 79) at 43:10–44:10.

[73]  Pl.'s Resp. to Defs.' Statement of Facts (Doc. 66) ¶ 29.

[74]  Long Dep. (Doc. 79) at 41:15–42:1, 44:18.

[75]  Smith Dep. (Doc. 78) at 11:13–21.

[76]  *Id.*  The trial (apparently) took place in the District Court of St. Francis County.  The Court is unaware of whether such trials involve a court reporter.  In any event, neither party has provided the Court with a transcript of Mr. Long's trial.  And the Court has been unable to obtain a transcript.

[77]  Pl.'s Resp. to Defs.' Statement of Facts (Doc. 66) ¶ 30.

[78]  Long Dep. (Doc. 79) at 41:25–42:1.

[79]  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citing FED. R. CIV. P. 56(c)(2)).

case.[80]  Conversely, if the nonmoving party can present specific facts by "affidavit, deposition, or otherwise, showing the existence of a genuine issue for trial," then summary judgment is not appropriate.[81]

Importantly, "[t]he mere existence of a factual dispute is insufficient alone to bar summary judgment . . . ."[82]  The dispute of fact must be both genuine and material to prevent summary judgment.[83]  A genuine dispute of fact exists where a rational juror could decide the particular question of fact for the nonmoving party.[84]  A material dispute of fact exists where the juror's decision on the particular question of fact determines the outcome of a potentially dispositive issue under the substantive law.[85]

## I.  Claims that Survive Summary Judgment

Three of Mr. Long's claims survive summary judgment.  The first surviving claim is a § 1983 retaliatory-inducement-to-prosecute claim.  In short, Mr. Long alleges that Officer Smith intentionally lied on the Affidavit of Arrest (which led to Mr. Long's prosecution) because Mr. Long had sued and publicly criticized Officer Smith.  According to Mr. Long, this violates the First Amendment of the United States Constitution.  The second surviving claim—basically predicated on the same allegations—is a state law claim for malicious prosecution.  The Court discusses each of these two claims in turn.  The last surviving claim, which alleges a violation of "the right to remonstrate" under the Arkansas Constitution, needs no discussion because

---

[80]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[81]  *Grey v. City of Oak Grove*, 396 F.3d 1031, 1034 (8th Cir. 2005).

[82]  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

[83]  *Id.*

[84]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[85]  *Id.*

Defendants did not address it in their summary judgment briefing.[86]

### A.  Mr. Long's First Amendment Retaliation Claim Under Section 1983

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out."[87]  Both the United States Supreme Court and the Eighth Circuit have recognized claims for "retaliatory inducement to prosecute."[88]  A retaliatory inducement to prosecute occurs when a government official, such as Officer Smith, "influence[s] the prosecutorial decision . . . in retaliation" for protected speech, and thereby "induce[s] the prosecutor to bring charges that would not have been initiated without [the government official's] urging."[89]  This is the type of claim Mr. Long alleges here.  According to Mr. Long, Officer Smith filed the Affidavit of Arrest (with numerous intentionally false statements) in retaliation for Mr. Long's protected speech: specifically, the 2018 lawsuit against Officer Smith and the Facebook posts criticizing Officer Smith.[90]

Generally, First Amendment retaliation claims require a plaintiff to establish, by a preponderance of the evidence, that: (1) the plaintiff engaged in protected activity, (2) the defendant's actions "caused an injury to the plaintiff[] that would chill a person of ordinary firmness from continuing to engage in the activity," and (3) "a causal connection exists between

---

[86]  Compl. (Doc. 1) ¶ 1.  Mr. Long's Complaint alleges that Defendants violated Mr. Long's "right to remonstrate under the Arkansas Constitution."  *Id.*  Article two, section four of the Arkansas Constitution states that "the right of the people peaceably to assemble, consult for the common good; and to petition, by address or remonstrance, the government, or any department thereof, shall never be abridged."  Violations of rights under the Arkansas Constitution are actionable under the Arkansas Civil Rights Act—Arkansas's state analog to § 1983.  *See* Ark. Code Ann. § 16-123-105 (imposing liability on any person who, under color of law, deprives any person of the "rights, privileges, or immunities secured by the Arkansas Constitution . . .").  At the summary judgment hearing, Mr. Long, through his attorney, acknowledged that any of Mr. Long's state constitutional claims rise or fall with his federal claims.  Dec. 3, 2021 Hr'g Tr. at 67–68.

[87]  *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

[88]  *Small v. McCrystal*, 708 F.3d 997, 1009 (8th Cir. 2013) *abrogated on other grounds by Burns v. Reed*, 500 U.S. 478 (1991); *Hartman*, 547 U.S. at 256.

[89]  *Hartman*, 547 U.S. at 251, 262.

[90]  Compl. (Doc. 1) ¶¶ 21, 23–24.

the retaliatory animus and the injury."[91]  For purposes of summary judgment, Defendants do not

contest that Mr. Long has established the first two elements.  Rather, Defendants focus their fire

on a single part of the causation element.  Specifically, Defendants argue that Mr. Long cannot

show the absence of probable cause for his prosecution.[92]  According to Defendants, this failure is

fatal to Mr. Long's attempt to establish causation.[93]

Although they don't expressly acknowledge it, Defendants' argument finds its provenance

in the Supreme Court's 2006 *Hartman v. Moore* decision.[94]  There, the Supreme Court concluded

that a plaintiff bringing a retaliatory-inducement-to-prosecute case must prove, "as an element of

[his or her] case," the absence of probable cause for the prosecution.[95]  The Court explained that

this additional requirement reflected the unique characteristics of a retaliatory-inducement-to-

prosecute claim.

> Herein lies the distinct problem of causation in cases like this one.  Evidence of an
> inspector's animus does not necessarily show that the inspector induced the action
> of a prosecutor who would not have pressed charges otherwise.  Moreover, to the
> factual difficulty of divining the influence of an investigator or other law
> enforcement officer upon the prosecutor's mind, there is an added legal obstacle in
> the  longstanding  presumption  of  regularity  accorded  to  prosecutorial
> decisionmaking.  And this presumption that a prosecutor has legitimate grounds for
> the action he takes is one we do not lightly discard, given our position that judicial
> intrusion into executive discretion of such high order should be minimal . . . .
>
> Some sort of allegation, then, is needed both to bridge the gap between the non-
> prosecuting government agent's motive and the prosecutor's action, and to address
> the presumption of prosecutorial regularity.  And at the trial stage, some evidence
> must link the allegedly retaliatory official to a prosecutor whose action has injured

---

[91]  *McCrystal*, 708 F.3d at 1008.  "Retaliation need not have been the sole motive, but it must have been a 'substantial
factor' in those decisions."  *Id.* (quoting *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir.2007)).

[92]  Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 53) at 3–8.

[93]  *Id.*

[94]  547 U.S. at 261–66.

[95]  *Id.* at 265–66.

the plaintiff.  The connection, to be alleged and shown, is the absence of probable cause.[96]

In short, for retaliatory-inducement-to-prosecute claims, establishing the absence of probable cause is necessary (but not always sufficient) to proving the causation element of the general three-part retaliatory action test set forth above.[97]

Defendants' Motion for Summary Judgment on the retaliatory-inducement-to-prosecute claim is limited in nature, focusing on the existence or absence of probable cause.  Because of the limited nature of the Motion, the Court need not (and should not) address the first two prongs of the general three-part retaliatory action test.  Nor should the Court address any aspect of the causation element other than what Defendants' briefing has raised.  Accordingly, Mr. Long's retaliatory-inducement-to-prosecute claim survives summary judgment if a rational juror could read the record in a way that establishes the absence of probable cause for the prosecution of Mr. Long.

"Probable cause . . . exists when there is a 'substantial probability that a crime has been committed and that a specific individual committed the crime.'"[98]  Perhaps put slightly differently, "[p]robable cause exists if the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual . . . had committed an offense."[99]  The Eighth Circuit explains that "[t]he inquiry is a commonsense, practical one based on the totality-of-the-circumstances."[100]  The inquiry is also an objective one that analyzes the facts known to the state

---

[96]  *Id.* at 263 (internal citations omitted).

[97]  *Id.* at 265–66.

[98]  *Odom v. Kaizer*, 864 F.3d 920, 923 (8th Cir. 2017) (quoting *Bruner v. Baker*, 506 F.3d 1021, 1026 (10th Cir. 2007)).

[99]  *McCrystal*, 708 F.3d at 1003.

[100]  *Odom*, 864 F.3d at 923 (quoting *Block v. Dupic*, 758 F.3d 1062, 1064 (8th Cir. 2014)).

at the relevant time.[101]   Finally, "where the [record] facts are in dispute or they are subject to different inferences, the question of probable cause is for the jury; however, where the facts are not disputed or are susceptible to only one reasonable inference, the question is one of law for the court."[102]

### 1.  No Probable Cause for the Theft-by-Receiving Charge

One of the three crimes for which Mr. Long was prosecuted (and ultimately acquitted) was theft by receiving.  Recall that, in his Affidavit of Arrest, Officer Smith swore that (1) Mr. Long sought the Internal Affairs Investigation Letter through a FOIA request, (2) the FOIA request was denied, (3) Mr. Long conspired with others to steal the letter, and (4) Mr. Long was thus in receipt of stolen property.[103]

A rational juror could easily conclude Officer Smith was intentionally lying.  There is evidence that, before Officer Smith filed the Affidavit of Arrest, Chief Lee told Officer Smith that either Chief Lee or Chief Lee's secretary "could have accidentally" given the Internal Affairs Investigation Letter to Mr. Long in response to the FOIA request.[104]   So, a rational juror could conclude that Mr. Long received the letter from the police as part of its FOIA response, that Officer Smith knew this when he filed the Affidavit, and thus that Officer Smith's allegations of conspiracy and theft were false.  Given all this, a rational juror could conclude that there was no probable cause to prosecute Mr. Long for theft by receiving.[105]

---

[101] *Smithson v. Aldrich*, 235 F.3d 1058, 1064 (8th Cir. 2000).

[102] *Linn v. Garcia*, 531 F.2d 855, 861 (8th Cir. 1976).

[103] Ex. 10 to Defs.' Statement of Facts (Doc. 54-10) at 2.

[104] Chief Lee Depo (Doc. 80) at 26:9-25; *see also* Long Dep. (Doc. 79) at 23:7–21, 24:11–22, 59:10–21 (Mr. Long testifying about receiving a response to a FOIA request that included the Internal Affairs investigation file concerning the incident with Derrick Long).

[105] Theft by receiving appears at Arkansas Code Annotated section 5-36-106, which provides in pertinent part:

   (a) A person commits the offense of theft by receiving if he or she receives, retains, or disposes of stolen property of another person: (1) Knowing that the property was stolen; or (2) Having good

Unsurprisingly, Defendants concede the existence of a genuine dispute of fact with respect to probable cause for the theft-by-receiving charge.[106]  That concession leaves Defendants to argue a much harder proposition: That probable cause for this charge is immaterial because probable cause existed for the prosecution of two other charges.[107]  There are two flaws in Defendants' argument.  First, as explained below, the Court concludes that there are genuine and material disputes of fact with respect to probable cause to prosecute the other two charges.  Second, and even more importantly, Defendants' legal argument—that probable cause for one charge cures or excuses the lack of probable cause for other charges—improperly conflates Fourth Amendment doctrine and First Amendment doctrine.

Defendants rely on two Eighth Circuit cases, *Foster v. Metropolitan Airports Commission* and *Linn v. Garcia*.  Both cases explain that, because an "arrest and detention" of a person is "a single incident," if "a peace officer has probable cause to believe that a person is committing a particular public offense, he is justified in arresting that person, and it is immaterial that the officer may have thought, without probable cause, that the defendant was committing or had committed other offenses as well."[108]  Defendants' reliance on these Fourth Amendment cases is misplaced.  The cases (and others like them) are premised on the idea that "[a]n arrested individual is no more seized when he is arrested on three grounds rather than one . . . ."[109]  But that idea does not carry over to the retaliatory prosecution context.  Each charge prosecuted in the absence of probable

---

reason to believe the property was stolen.

[106] Defs.' Reply to Pl.'s Resp. to Defs.' Mot. for Summ. J. (Doc. 74) at 5; *see also* Dec. 3, 2021 Hr'g Tr. at 8 (Officer Smith's counsel stating that "it's safe to assume that [the theft-by-receiving facts] would be disputed" because they were not raised).

[107] Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 53) at 4.

[108] *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1080 (8th Cir. 1990) (quoting *Garcia*, 531 F.2d at 862).

[109] *Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007); *see also Foster*, 914 F.2d at 1080; *Garcia*, 531 F.2d at 862.

cause is an independent constitutional injury and imposes independent burdens and hardships. This is true whether the charge is tried separately, or by happenstance is tried with charges supported by probable cause. To hold otherwise would mean that a public official could use one valid but minor charge to insulate numerous other unconstitutional and major charges designed to silence a critic.

The Eighth Circuit has not confronted whether probable cause for one charge excuses a retaliatory prosecution on other charges that lack probable cause. However, we are not without persuasive guidance on this point. In a somewhat analogous context (malicious prosecution), "several . . . circuits have concluded [that] probable cause to believe an individual committed one crime—and even his conviction of that crime—does not foreclose a malicious prosecution claim for additionally prosecuting the individual on a separate charge."[110] As the Seventh Circuit has explained, "[l]ogic supports the distinction" between false arrest and malicious prosecution.[111] While a person can only be seized once regardless of the number of reasons for the arrest, "when it comes to prosecution, the number of charges matters: the accused must investigate and prepare a defense to each charge, and as the list of charges lengthens (along with the sentence to which the accused is exposed), the cost and psychic toll of the prosecution on the accused increase."[112] The Seventh Circuit's logic is sound.

For the foregoing reasons, Mr. Long's claim that Officer Smith induced the theft-by-receiving prosecution as retaliation for protected speech survives summary judgment.[113]

---

[110] *Holmes*, 511 F.3d at 682 (citing *Johnson v. Knorr*, 477 F.3d 75, 83–85 (3d Cir.2007); then citing *Uboh v. Reno*, 141 F.3d 1000, 1005 (11th Cir.1998); and then citing *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir.1991)).

[111] *Id.*

[112] *Id.*

[113] Unlike the portion of Mr. Long's retaliatory-inducement-to-prosecute claims that address the harassing communications and harassment charges, Defendants have not sought to shield Officer Smith's actions regarding the theft-by-receiving charge with the qualified-immunity doctrine. In their summary judgment papers, Defendants' brief discussion of qualified immunity focuses solely on the harassing communications and

### 2. No Probable Cause for the Harassing Communications and Harassment Charges

With respect to the harassing communications and harassment charges, Officer Smith stated the following in the Affidavit of Arrest:

> Monday, March 26, 2018, at approximately 11:11 PM, Grant Long posted a document related to a personnel matter at the Forrest City Police Department referencing the opinion of a former disgruntled employee regarding Darren Smith.
>
> …
>
> Grant Long has continually made false statements about Darren Smith on a public for[u]m Facebook; Let's Talk Forrest City. He has accused me falsely of letting a drunk driver continue to operate a motor vehicle after having conducted tests that show the driver was intoxicated. On the same forum he also public[ly] accused me of destroying evidence related to such. Mr. Long knew when he posted such that he was posting falsehoods and that the information he was providing was not true.[114]

Mr. Long says Officer Smith intentionally lied about much or all of this information. He says Officer Smith did so in retaliation for Mr. Long's public criticism. And he says this intentionally false information led to his prosecution.

Defendants' sole merits argument is that a neutral magistrate—a St. Francis County District Court Judge—signed off on the Warrant of Arrest.[115] Defendants say this is an independent determination of probable cause to arrest (and therefore to prosecute) that breaks the chain of

---

harassment charges. "Qualified immunity is an affirmative defense for which the defendant carries the burden of proof." *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002). The Court declines to stitch together a qualified-immunity argument for Defendants that Defendants have not made and supported themselves. In any event, "'if there is a genuine dispute concerning predicate facts material to the qualified immunity issue,' a district court must deny summary judgment." *Watson v. Boyd*, 2 F.4th 1106, 1109 (8th Cir. 2021). The Court has already explained that, on one possible version of the disputed facts in this record, a rational juror could conclude that (1) Officer Smith intentionally lied on the Affidavit of Arrest, and (2) the true facts known to Officer Smith showed an absence of probable cause (and even arguable probable cause) for the theft-by-receiving charge. As further explained below in the subsection addressing the harassing communications and harassment charges, this is enough to overcome qualified immunity at this stage.

[114] Ex. 10 to Defs.' Statement of Facts (Doc. 54-10) at 2.

[115] Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 53) at 4, 7.

retaliatory causation.[116]  According to Defendants, the only way for Mr. Long to overcome the

neutral magistrate's decision to sign-off on the Warrant of Arrest is to make out a *Franks*

violation.[117]  That is, Mr. Long must come forward with evidence from which a rational juror could

conclude that "the judicial finding of probable cause [was] based solely on information [Officer

Smith] knew to be false or would have known was false had he not recklessly disregarded the

truth."[118]

      The biggest problem for Defendants is that there are genuine and material disputes of fact

that preclude summary judgment.  The record is replete with genuinely disputed material facts

from which a rational juror could find that Officer Smith knowingly lied or recklessly disregarded

the truth in multiple portions of the Affidavit of Arrest—including the portions concerning

harassment and harassing communications.

      First, consider Officer Smith's statement that "Grant Long has continually made false

statements about [me] on a public for[u]m on Facebook: Let's Talk Forrest City."[119]  The record

reflects one post involving the Internal Affairs Investigation Letter, one post involving the traffic

stop video, and one comment to the post about the traffic stop.  A rational juror could easily

---

[116] *Id.* at 7.

[117] *Id.*

[118] *McCrystal*, 708 F.3d at 1006; *see also Franks v. Delaware*, 438 U.S. 154, 171–72 (1978) (holding that a warrant may be invalid if a magistrate's probable cause determination was based on an affidavit that contained false statements made knowingly or with reckless disregard for the truth); Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 53) at 4 ("To establish a *Franks* violation, the plaintiff must prove '1) that a false statement knowingly and intentionally, or with reckless disregard to the truth, was included in the affidavit, and 2) that the affidavit's remaining content is insufficient to provide probable cause.'") (quoting *United States v. Humphreys*, 982 F.2d 254, 259 n.2 (8th Cir. 1992)).

*Franks*-type arguments are not typically merits arguments.  Rather, the Court almost exclusively sees such arguments pressed in support of qualified immunity.  The Court has never seen the argument deployed to break the causal chain in the merits portion of a retaliatory-inducement-to-prosecute case.  In any event, even indulging the theoretical framework of Defendants' argument, Defendants are not entitled to summary judgment for the reasons explained below.

[119] Ex. 10 to Defs.' Statement of Facts (Doc. 54-10) at 2.

conclude that Officer Smith's use of the word "continually" to describe Mr. Long's criticisms was intentionally false.

Second, consider Officer Smith's statement that Grant Long "accused me falsely of letting a drunk driver continue to operate a motor vehicle after having conducted tests that show the driver was intoxicated."[120]  That's a remarkably specific statement.  But a rational juror could find that Mr. Long said nothing of the sort, and that Officer Smith knew it.  The relevant Facebook post doesn't include such a statement.  In the post, Mr. Long wrote, "[l]ook at the work we pay for just touch the link to play it."[121]  Mr. Long then provided the bodycam video, which he entitled "Smith Let's a Dirty DWI Driver Go."[122]  In the video, Officer Smith himself refers to the driver as "dirty."  None of this amounts to Mr. Long saying that Officer Smith "conducted tests that show the driver was intoxicated."[123]

Third, consider Officer Smith's statement that Mr. Long "public[ly] accused me of destroying evidence" and that Mr. Long "knew when he posted such that he was posting falsehoods

---

[120] *Id.*

[121] Ex. 5 to Defs.' Statement of Facts (Doc. 54-5).

[122] *Id.*

[123] For sure, Mr. Long was saying that he believed the driver was drunk and should have been detained.  But a rational juror could conclude that Mr. Long never came close to saying Officer Smith had a test result that proved the driver was drunk.

Defendants' briefing on the probable-cause issue focuses on the idea that Officer Smith could not have detained the driver suspected of DWI.  Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 53) at 5–8.  To Defendants, that means that Officer Smith made a true statement when he said that Mr. Long falsely accused Officer Smith of improperly letting the driver go.  *Id.* at 5.  This argument is a red herring.  Defendants' contention that Officer Smith could not have detained the driver is based on the driver's blood-alcohol content of 0.046.  Under Arkansas law, Defendants note, a blood-alcohol content "that is between .08 and .04 results in no presumption of intoxication, and below .04 there is a presumption of no intoxication."  *Id.* (citing Ark. Code Ann. § 5-65-206).  However, Defendants do not direct the Court to any Arkansas law that says an officer can only detain a driver for DWI when that driver's blood-alcohol content equals 0.08 or greater.  Officer Smith himself said in the video that the driver was drinking with a CDL and that the driver was driving dirty.  Nothing says that Officer Smith could not rely on his own observations to conclude that the driver was driving while intoxicated.  The driver's blood-alcohol content was 0.046, not zero.  Thus, the driver's blood-alcohol content was not, as a matter of law, dispositive evidence that the driver was not intoxicated.  Indeed, Arkansas law is clear that a blood-alcohol content of 0.046 can be used in combination with other evidence to show intoxication.  Ark. Code Ann. § 5-65-206(a)(2).

and that the information he was providing was not true."[124]  This statement refers to a comment Mr. Long made on his Facebook post about the traffic stop: "Eric said it clear[ly] show the point level but he couldn't say why the officer deleted the video in the street but this is an officer who say he is missing a whole mo[n]th of video."[125]  A rational juror could view the bodycam switching (between Officers Smith and Brayboy) and Officer Smith's subsequent manipulation of one of the bodycams as evidence that Officer Smith did delete the video in the street.  Thus, a rational juror could conclude that Mr. Long's comment was true, that Officer Smith knew it was true, and that Officer Smith's description of the comment as false in the Affidavit of Arrest was a lie.  At the very least, a rational juror could conclude that Officer Smith had absolutely no basis to state that Mr. Long knew the Facebook comment was a falsehood.[126]

Fourth, consider Officer Smith's statement that "Grant Long posted a document related to a personnel matter . . . referencing the opinion of a former disgruntled employee" and that "[t]he opinion was . . . refuted . . . ."[127]  Officer Smith's statement is referencing the Internal Affairs Investigation Letter.  There is no record evidence that the findings in that letter were ever "refuted."  A rational juror could thus conclude that Officer Smith's statement was intentionally false.

---

[124] Ex. 10 to Defs.' Statement of Facts (Doc. 54-10) at 2.

[125] Ex. 5 to Defs.' Statement of Facts (Doc. 54-5).

[126] Officer Smith never elaborated in the Affidavit how he knew Mr. Long's inner thoughts.  Officer Smith did not say, for instance, that Mr. Long told him that he was going to post lies about Officer Smith.  A rational juror does not have to take Officer Smith's words at face value.  Indeed, given that a rational juror could conclude that numerous falsehoods appeared in the Affidavit of Arrest, a rational juror could infer that Officer Smith made this part up to help push the Affidavit of Arrest over the line.  *Falsus in uno falsus in omnibus*.  As such, a rational juror could find that this statement, at best, manifested a reckless disregard of the truth.

Officer Smith offers no testimony to help his cause.  When questioned on why he completed the Affidavit of Arrest, he continuously said, "[b]ecause [Mr. Long] violated the law."  *See* Smith Dep. (Doc. 78) at 9:18–20, 14:25–15:2.  Officer Smith relies exclusively on the allegations in the Affidavit of Arrest and has no personal knowledge of what he believed to be the grounds for swearing out the Affidavit of Arrest.

[127] Ex. 10 to Defs.' Statement of Facts (Doc. 54-10) at 2.

The foregoing is probably enough to deny summary judgment.  However, overindulging Defendants' *Franks*-based merits argument for a moment, the Court next considers whether the Affidavit of Arrest provided probable cause for the harassing communications or harassment charges once the intentionally or recklessly false statements are removed.[128]  More precisely in the context of our case, the Court considers whether there are genuinely disputed material facts that could allow a juror to conclude there was no probable cause for one or both charges.

Let's start with harassing communications.  Arkansas Code Annotated section 5-71-209 provides in pertinent part:

> A person commits the offense of harassing communications if, with the purpose to harass, annoy, or alarm another person, the person: (1) Communicates with a person, anonymously or otherwise, by telephone, telegraph, mail, email, message delivered to an electronic device, or any other form of written or electronic communication, in a manner likely to harass, annoy, or cause alarm . . . .[129]

There is nothing in the Affidavit (once it is reconstructed) or in the record that supplies probable cause to believe Mr. Long violated the statute.  Mr. Long made his two postings (plus one comment) to the Facebook group, Let's Talk Forrest City.  Although it turns out that Officer Smith was part of that group, nothing in the Affidavit of Arrest or the record suggests that Mr. Long knew Officer Smith was part of that group.  A rational juror could read the record in a way that establishes Mr. Long did not "communicate[] with [Officer Smith]" as that term is used in the statute.  He certainly didn't communicate with Officer Smith "in a manner likely to harass, annoy, or cause alarm" to Officer Smith.  Moreover, on this pro-plaintiff read of the record, because Mr.

---

[128] *Cf. McCrystal*, 708 F.3d at 1007–08.  For this analysis, the Court "reconstructs" the Affidavit of Arrest to determine if the reconstructed affidavit would provide probable cause for the charges of harassing communications or harassment.  The Eighth Circuit says that a reconstructed affidavit "must omit" statements a rational juror could conclude were false and include "material allegedly omitted with reckless disregard for the truth."  *Hunter v. Namanny*, 219 F.3d 825, 829–30 (8th Cir. 2000); *see also McCrystal*, 708 F.3d at 1008 (stating that a revised warrant affidavit should reflect disputed facts resolved in a plaintiff's favor).  That is what the Court does here.

[129] Ark. Code Ann. § 5-71-209(1).  This statute was amended in 2019.  The Court cites the statute as it was written at the time of the events giving rise to this case.

Long did not know that Officer Smith would see his posts, Mr. Long could not have the "purpose

to harass, annoy, or alarm" Officer Smith.[130]

The harassment charge is even more far-fetched.  Arkansas Code Annotated section 5-71-

208 provides in pertinent part:

> (a) A person commits the offense of harassment if, with purpose to harass, annoy,
> or alarm another person, without good cause, he or she:
>
> …
>
> (5) Engages in conduct or repeatedly commits an act that alarms or seriously annoys
> another person and that serves no legitimate purpose.

The statute explicitly allows conduct that serves a legitimate purpose, even if it does alarm or

seriously annoy someone.  On the most plaintiff-favorable read of the genuinely disputed material

facts, Mr. Long (1) posted a bodycam video of the traffic stop, (2) fairly criticized Officer Smith's

handling of the traffic stop on the video, and (3) posted a formal letter detailing the results of an

Internal Affairs investigation into Officer Smith.  If these postings do not serve a legitimate

purpose, nothing does.  If these postings do not serve a legitimate purpose, then the statute violates

the First Amendment.[131]  Accordingly, there's no probable cause for the harassment charge.

---

[130] One further point bears mentioning.  If Arkansas's harassing communications statute were to be interpreted to
prohibit what (on the most pro-plaintiff read of the record) Mr. Long has done here, the statute would clearly violate
the First Amendment.  A private citizen criticizing a police officer's conduct of a traffic stop and disseminating an
Internal Affairs finding of bad behavior by the officer occupies the heartland of protected speech.  *See Hoyland v.
McMenomy*, 869 F.3d 644, 655 (8th Cir. 2017) ("The First Amendment protects a significant amount of verbal
criticism and challenge directed at police officers.  Indeed, criticism of public officials lies at the very core of
speech protected by the First Amendment.") (internal quotations and citations omitted).  State statutes can
constitutionally encroach on that right to criticize only for very limited reasons.  For example, a statute can prevent
and punish speech that "by [its] very utterance inflict[s] injury or tend[s] to incite an immediate breach of the
peace." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942).  (This is why libel and fighting words can be
prohibited.)  Mr. Long's two postings and one comment on Facebook fall nowhere close to the vicinity of that type
of speech.  No public official (including Officer Smith) could possibly conclude that Mr. Long's speech was
anything other than core political speech protected by the First Amendment.  In short, no probable cause existed
to believe Mr. Long committed a crime—regardless of the specific wording of the harassing communications
statute.

[131] *See supra* note 130.

25

### 3.  No Qualified Immunity

As a back-up to Defendants' merits argument, Officer Smith also argues that he is entitled to qualified immunity.[132]  But his argument is just a re-packaging of Defendants' merits-based *Franks* argument.  For much the same reasons as described above, it does not carry the day.

"At summary judgment, qualified immunity shields a law enforcement officer from liability in a § 1983 action unless: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional . . . right; and (2) the right was clearly established at the time of the deprivation.'"[133]  Under Supreme Court precedent, a right is clearly established when "'[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'"[134]  To show this, the Eighth Circuit states that "[a] plaintiff need not cite a case directly on point, but controlling authority or a robust consensus of cases of persuasive authority must have put the statutory or constitutional question beyond debate as of the date of the alleged violation."[135]

The Eighth Circuit has made clear that, in the qualified immunity context, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established."[136]  To answer this question, the Eighth Circuit instructs the Court to "do more than determine that the law was 'clearly established' in the abstract."[137]  Instead, the Court must "examine the information possessed by . . . [Officer Smith] . . . to determine whether, given the facts known to [him] at the

---

[132] Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 53) at 10.

[133] *Barton v. Taber*, 908 F.3d 1119, 1123 (8th Cir. 2018) (quoting *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)).

[134] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (brackets in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

[135] *Hamner v. Burls*, 937 F.3d 1171, 1176 (internal quotations omitted) (quoting *al-Kidd*, 563 U.S. at 741–42).

[136] *Hamner*, 937 F.3d at 1178 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)).

[137] *Langford v. Norris*, 614 F.3d 445, 461 (8th Cir. 2010) (quoting *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995)).

time, a reasonable [officer] would have known that [his] actions violated the law."[138]  This doesn't mean Officer Smith's exact conduct must have been deemed unconstitutional before March 27, 2018 (the day he filed the Affidavit of Arrest), but it does mean that, "in the light of preexisting law[,] the unlawfulness must be apparent."[139]

In the context of our case, Officer Smith is entitled to qualified immunity unless, "on an objective basis, it is obvious that no reasonably competent officer would have concluded" that probable cause existed for the charges.[140]  The Eighth Circuit says that a magistrate's issuance of a warrant serves as "the clearest indication" that an officer "acted in an objectively reasonable manner[.]"[141]  A magistrate's imprimatur, however, is not dispositive.  The Supreme Court acknowledges the possibility that "a magistrate, working under docket pressures, will fail to perform as a magistrate should."[142]  Plus, the Eighth Circuit says that "[w]here the judicial finding of probable cause is based solely on information the officer knew to be false or would have known was false had he not recklessly disregarded the truth, not only does the arrest violate the Fourth Amendment, but the officer will not be entitled to good faith immunity."[143]  All these propositions seem fairly transferable to the retaliatory-inducement-to-prosecute context.

---

[138] *Id.* (quoting *Miller v. Schoenen*, 75 F.3d 1305, 1308 (8th Cir. 1996)).

[139] *Id.* (quoting *Anderson*, 483 U.S. at 640).

[140] *Cf. Saterland v. Spencer*, 725 F.3d 838, 841 (8th Cir. 2013) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  In the Fourth Amendment context, an officer is entitled to qualified immunity if "arguable probable cause" existed for the arrest.  *Quraishi v. St. Charles Cnty.*, 986 F.3d 831, 836 (8th Cir. 2021).  "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable."  *Id.*; *see also Copeland v. Locke*, 613 F.3d 875, 880 ("[T]he governing standard for a Fourth Amendment unlawful arrest claim is not probable cause in fact but arguable probable cause … that is, whether the officer should have known that the arrest violated plaintiff's clearly established right.").

[141] *Saterland*, 725 F.3d at 841. (brackets in original).

[142] *Malley*, 475 U.S. at 345–46.

[143] *McCrystal*, 708 F.3d at 1006 (quoting *Myers v. Morris*, 810 F.2d 1437, 1457 (8th Cir. 1987)).

In a nutshell, Officer Smith argues that he is insulated from liability for retaliatory prosecution because there was probable cause for the crimes alleged in his Affidavit of Arrest.[144] Officer Smith emphasizes that a neutral magistrate and a prosecutor both determined there was probable cause for all three charges.  This is basically the *Franks*-related argument that the Court has already rejected above.  There is no reason to go through the same analysis again.  In short, a rational juror could read the record in such a way as to establish (1) that Officer Smith knowingly lied multiple times in the Affidavit of Arrest, (2) that he did so to manufacture probable cause where he knew it did not exist, and (3) that, after reconstructing the Affidavit of Arrest without these lies,[145] there was no probable cause (or even arguable probable cause) in the Affidavit of Arrest or in the record to support any of the charges.  Officer Smith was either "plainly incompetent" or "knowingly violate[d] the law."[146]

Mr. Long's right to criticize police without facing a retaliatory criminal prosecution in the absence of probable cause (or even arguable probable cause) was clearly established as of the date Officer Smith filed the Affidavit of Arrest (March 27, 2018).  In fact, the Supreme Court's 1986 decision in *Malley v. Briggs* said that an officer submitting an arrest-warrant application is not entitled to qualified immunity "where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable . . . ."[147]  Viewed in the light most favorable to Mr. Long, for the reasons discussed above, the Affidavit here meets that test.

Citing and relying on cases that predate the conduct at issue in our case, the Eighth Circuit has held that "[a] citizen's right to exercise First Amendment freedoms without facing retaliation

---

[144] Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 53) at 10–11.

[145] *See supra* note 128.

[146] *Malley*, 475 U.S. at 341.

[147] 475 U.S. at 344–45.

from government officials is clearly established."[148]  In *Small v. McCrystal*, the Eighth Circuit denied qualified immunity to police officers on the plaintiffs' claim for retaliatory inducement to prosecute.[149]  For purposes of summary judgment, the Eighth Circuit determined that the officers made multiple false statements to a prosecutor while seeking an arrest warrant for members of a crowd who were "verbally abusive."[150]  The Eighth Circuit said no probable cause existed to arrest any of the plaintiffs.[151]  "Nonetheless, warrants issued, they were arrested, and some were tried."[152]  The Eighth Circuit concluded that the facts there "state[d] a claim for retaliatory inducement to prosecute."[153]  So, by 2013, it was clearly established that Officer Smith's conduct (falsifying information to procure the arrest and prosecution of an individual in retaliation for protected speech) violated the First Amendment.

In sum, there are numerous genuinely disputed material facts as to whether Officer Smith acted in an objectively reasonable manner and whether he violated clearly established law.  Thus, Officer Smith is not presently entitled to qualified immunity with respect to Mr. Long's First Amendment retaliation claim.

### B.  Mr. Long's Malicious Prosecution Claim

To prove malicious prosecution in Arkansas, a plaintiff must show: "(1) a proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice on the part of

---

[148] *Quraishi*, 986 F.3d at 838 (quoting *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010) (per curiam)); *see also Williams v. City of Alexander*, 772 F.3d 1307, 1313 (8th Cir. 2014) (same).

[149] *McCrystal*, 708 F.3d at 1008–09.

[150] *Id.* at 1009.

[151] *Id.*

[152] *Id.*

[153] *Id.*

the defendant; and (5) damages."[154]  Defendants' only argument on summary judgment is that Mr.

Long's malicious prosecution claim fails because there was probable cause for the Affidavit of

Arrest and thus the prosecution.[155]  This again is the same argument that the Court has addressed

in the context of Mr. Long's First Amendment claim.  For the same reasons the Court explained

there, Mr. Long's state law malicious prosecution claim survives summary judgment.[156]

## II.  Claims that Fail on Summary Judgment

Three of Mr. Long's claims do not survive summary judgment.  The first claim that falls

by the wayside is Mr. Long's Fourth Amendment claim.[157]  The second claim that's out is Mr.

Long's state law claim for abuse of process.[158]  The third claim—or really set of claims—that fails

at this stage is Mr. Long's federal claim(s) against Forrest City.[159]  The Court discusses each of

these claims in turn.

### A.  Mr. Long's Fourth Amendment Claim

Mr. Long alleges that he was arrested without probable cause in violation of his Fourth

Amendment rights.[160]  The Fourth Amendment protects "[t]he right of the people to be secure in

---

[154] *Sundeen v. Kroger*, 355 Ark. 128, 142, 133 S.W.3d 393, 395 (2003).

[155] Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 53) at 3.

[156] In their summary judgment briefing, Defendants briefly mention that Officer Smith is entitled to qualified immunity on Mr. Long's malicious prosecution claim.  Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 53) at 11. Mr. Long's malicious prosecution claim arises under state law.  Defendants do not point to any state-law grounds for qualified immunity.  Instead, Defendants' entire qualified immunity argument rests on federal law.  *Id.* at 9–11.  Federal qualified immunity does not apply to state-law claims.  *Herts v. Smith*, 345 F.3d 581, 588 (8th Cir. 2003).  Even if federal qualified immunity did apply, the Court's qualified immunity analysis with regard to the retaliatory-inducement-to-prosecute claim applies with equal force to the malicious prosecution claim.

[157] Compl. (Doc. 1) ¶ 28.

[158] *Id.* ¶ 13.

[159] *Id.* ¶ 24.

[160] *Id.* ¶ 28.  In his Complaint, Mr. Long also says that he was battered in violation of his Fourth Amendment rights, which would be an excessive-force claim.  *Id.*  Recall that this case originally began with an additional plaintiff, Arsenio Clinton.  The factual allegations in the Complaint that discuss a possible excessive-force claim exclusively discuss Officer Smith's conduct vis-a-vis Arsenio Clinton and other individuals—not Mr. Long.  *See id.* ¶¶ 6–9 (alleging that Officer Smith pushed Arsenio Clinton, pulled a gun on Arsenio Clinton, and tased an unknown individual).  As such, the Complaint cannot properly be read to include a claim by Mr. Long that he was battered

their persons . . . against unreasonable . . . seizures."[161]  The Supreme Court explains that a seizure "can take the form of 'physical force' or a 'show of authority' that in 'some way restrain[s] the liberty' of the person."[162]  The basic problem for Mr. Long with respect to his Fourth Amendment claim is that he was never detained or arrested.  So there was no seizure to trigger the Fourth Amendment's protections.

Mr. Long argues that he was seized when Officer Dowdy told him about the Warrant of Arrest and gave him a card with his court date on it.  He says this amounts to a seizure because of the pretrial burdens he suffered and his required attendance at court hearings.[163]  Specifically, Mr. Long argues that, "after being served with a citation to appear in court, [Mr. Long] was officially under the power of the court."[164]  Additionally, Mr. Long argues that his employment prospects were diminished, he suffered reputational harm, and he experienced the "financial and emotional strain of preparing a defense."[165]  Mr. Long cites Justice Ginsburg's concurrence in *Albright v. Oliver*, 510 U.S. 266, 278 (1994), for the proposition that these burdens can constitute a seizure.[166]

As Defendants contend, Mr. Long's argument misses the mark.[167]  This is so for at least two reasons.[168]  First, Justice Ginsburg's *Albright* concurrence is not binding.  Second, even after expressly acknowledging Justice Ginsburg's concurrence, the Eighth Circuit made clear that it has not adopted such a position.[169]  The circuit court explained it "has never held that pretrial

---

in violation of the Fourth Amendment.

[161] U.S. Const. amend. IV.

[162] *Torres v. Madrid*, 141 S. Ct. 989, 995 (2021) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).

[163] Br. in Supp. of Pl.'s Resp. to Defs.' Mot. for Summ. J. (Doc. 68) at 2–3.

[164] *Id.*

[165] *Id.*

[166] *Id.*

[167] Reply in Supp. of Defs.' Mot. for Summ. J. (Doc. 74) at 4–5.

[168] Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 53) at 2.

[169] *Tech. Ordnance, Inc. v. United States*, 244 F.3d 641, 651 (8th Cir. 2001).

restrictions . . . constitute a Fourth Amendment seizure."[170]   Here, where it is undisputed that Officer Dowdy never applied physical force or made any show of authority that in any way inhibited Mr. Long's freedom, Mr. Long was not seized for the purposes of the Fourth Amendment.  Because Mr. Long was never seized (much less arrested), his Fourth Amendment rights were never violated.  The Court will grant summary judgment to Defendants on Mr. Long's claim under the Fourth Amendment.

### B.  Mr. Long's Abuse-of-Process Claim

In Arkansas, "the test of abuse of process is whether the judicial process is used to extort or coerce."[171]   To ultimately prevail at trial on an abuse-of-process claim, Mr. Long would have to show: "(1) a legal procedure set in motion in proper form, even with probable cause and ultimate success; (2) the procedure is perverted to accomplish an ulterior purpose for which it was not designed; and (3) a willful act is perpetrated in the use of process which is not proper in the regular conduct of the proceeding."[172]

The Arkansas Supreme Court has been clear that the "key to the tort is the improper use of process after its issuance in order to accomplish a purpose for which the process was not designed."[173]   Defendants rightly home in on the phrase "*after its issuance*."   Specifically, Defendants say Mr. Long "has not and cannot set forth any evidence that [Officer] Smith used the judicial process after the judge signed the warrant in order to extort or coerce [Mr. Long] into anything."[174]

---

[170] *Id.*

[171] *S. Ark. Petro. Co. v. Schiesser*, 343 Ark. 492, 501, 36 S.W.3d 317, 323 (2001).

[172] *Id.*, 36 S.W.3d at 323.

[173] *Id.*, 36 S.W.3d at 323.

[174] Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 53) at 9.

Mr. Long disagrees.[175]  He says his claim survives summary judgment because Officer Smith (1) failed to tell the prosecuting attorney that Officer Smith falsified the Affidavit of Arrest and (2) appeared and participated in the trial.[176]  This argument is misplaced.  No rational juror could conclude that Officer Smith, through his post-Affidavit conduct, participated in the criminal process for any reason other than to help convict Mr. Long of the charges.  This conduct is entirely consistent with the primary purpose of a criminal prosecution—obtaining a conviction.  So, no rational juror could conclude that Officer Smith, after filing the Affidavit of Arrest, did anything out of step with a criminal prosecution.  He didn't try to use the judicial process to extort or coerce Mr. Long.  Indeed, there's no evidence that Officer Smith and Mr. Long interacted at all during the judicial process.[177]  The Court grants summary judgment to Defendants on Mr. Long's abuse-of-process claim.

### C.  Mr. Long's Federal Claims Against Forrest City[178]

Mr. Long alleges that Forrest City is liable under § 1983 because the City has a "custom and policy allowing [the unlawful] conduct" in which Officer Smith engaged.[179]  Mr. Long also alleges that Forrest City is liable under § 1983 because it failed to train Officer Smith that he couldn't "use 1st Amendment protected speech as a basis for filing criminal charges."[180]

---

[175] Br. in Supp. of Pl.'s Resp. to Defs.' Mot. for Summ. J. (Doc. 68) at 6.

[176] *Id.*

[177] It is not lost on the Court that one could say Officer Smith's participation in the trial was part of an attempt to indirectly silence Mr. Long or at least chill his free speech rights.  But that is not explicit extortion or coercion.  It is simply a desired byproduct of the process.

[178] Mr. Long sues Officer Smith in his official capacity.  In the Eighth Circuit, "claims against individuals in their official capacities are equivalent to claims against the entity for which they work . . . ."  *Gorman v. Bartch*, 152 F.3d. 907, 914 (8th Cir. 1998).

[179] *Id.*

[180] Compl. (Doc. 1) ¶ 24.  In his Complaint, Mr. Long alleges a failure-to-train claim.  *Id.*  In his Response to Defendants' Motion for Summary Judgment, Mr. Long adds in language suggestive of a change in theory from failure to train to failure to supervise.  *See* Br. in Supp. of Pl.'s Resp. to Defs.' Mot. for Summ. J. (Doc. 68) at 9. In their Reply, Defendants say Mr. Long is, "in effect, trying to amend his complaint at the dispositive-motion phase, months beyond the Court's deadline for amending pleadings."  Defs.' Reply to Pl.'s Resp. to Defs.' Mot.

The Supreme Court has held that a city can sometimes be held liable under § 1983.[181]  Of course, "it is well established 'that a municipality cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor.'"[182]  A city is subject to liability under § 1983 "where a constitutional violation has been committed pursuant to an official custom, policy, or practice."[183]  For such claims, a plaintiff "must show not only that a policy or custom existed, and that it was causally related to the plaintiff's injury, but that the policy itself was unconstitutional."[184]  Said differently, an official "custom, policy, or practice must be the moving force behind the violation."[185]

In addition to a custom, policy, or practice claim (or perhaps as a subspecies of such a claim), the Supreme Court has held that a municipality can "be liable under . . . § 1983 for constitutional violations resulting from its failure to train municipal employees."[186]  But this is a hard hill to climb.  The Supreme Court has specifically cautioned that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."[187]  "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be . . .

---

for Summ. J. (Doc. 74) at 9.  The Eighth Circuit says that "a claim for failure to supervise requires the same analysis as a claim for failure to train."  *Atkinson*, 709 F.3d at 1216 (quoting  *Robinette v. Jones*, 476 F.3d 589, 591 (8th Cir. 2007)).  So, the term given to Mr. Long's claim does not change the ultimate outcome here.

[181] *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690–91 (1978).

[182] *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1214 (8th Cir. 2013) (quoting *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389 (8th Cir. 2007)).

[183] *Luckert v. Dodge County*, 684 F.3d 808, 820 (8th Cir. 2012) (quoting *Johnson v. Blaukat*, 453 F.3d 1108, 1114 (8th Cir. 2006)).

[184] *Id.* (quoting *Patzner v. Burkett*, 779 F.2d 1363, 1367 (8th Cir. 1985)).

[185] *Id.* (quoting *Patzner*, 779 F.2d at 1367).

[186] *City of Canton v. Harris*, 489 U.S. 378, 380 (1989).

[187] *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

actionable under § 1983."[188]  And, as the Eighth Circuit has explained, the deliberate indifference standard is "rigorous."[189]  A "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."[190]

Forrest City argues that it is entitled to summary judgment.  The City's first asserted reason—that no predicate constitutional violation exists—works to defeat the Fourth Amendment claim against the City, but not the First Amendment claim against the City.  The City's second asserted reason—that Mr. Long cannot show that his rights were violated because of a City policy or custom—works to defeat part of the First Amendment Claim against the City.  But it requires a bit more discussion.[191]

The Eighth Circuit distinguishes between policy and custom.[192]  "[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."[193]  A custom is more unofficial and nebulous.  To establish a municipal custom, a plaintiff must demonstrate:

> (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.[194]

---

[188] *Id.* at 389.

[189] *Atkinson*, 709 F.3d at 1216.

[190] *Thompson*, 563 U.S. at 62 (quoting *Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)).

[191] *Id.* at 12–13.

[192] *Corwin v. City of Independence*, 829 F.3d 695, 699–700 (8th Cir. 2016).

[193] *Id.* at 700 (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)).

[194] *Corwin*, 829 F.3d at 700 (quoting *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014)).

For either a policy or a custom, it is necessary to determine the identity of the policymaking officials.[195]   This question of law must be answered before determining whether there are genuinely disputed material facts as to whether a policy or custom resulted in the predicate constitutional violation.[196]   This question is answered by consulting "(1) state and local positive law and (2) state and local custom or usage having the force of law."[197]

Forrest City is a city of the first class.[198]   At the time of the events challenged in this case, Arkansas Code Annotated section 14-52-101 had this to say about cities of the first class:

> The city council shall have power to establish a city police department, to organize it under the general superintendence of the mayor, and to prescribe its duties and define its powers in such manner as will most effectually preserve the peace of the city, secure the citizens thereof from personal violence, and safeguard their property from fire and unlawful depredations.[199]

Furthermore, Arkansas Code Annotated section 14-52-203(a) says, in cities of the first class, "the duty of the chief of police and other officers of the police department is under the direction of the mayor."  It is clear from the statutes that the Chief of Police is not the policymaking official.  This case does not require a decision as to whether the City Council members are the policymaking officials.  Even if the Mayor is the policymaking official (or both the Mayor and the City Council members count as policymaking officials), the outcome is the same.

The City argues that Mr. Long "has not, and cannot, identify or produce any policy of the City that requires its officers to act unconstitutionally" or that somehow caused the First

---

[195] *See Atkinson*, 709 F.3d at 1214–15.  The parties did not address this question in their briefing.  However, at the summary judgment hearing, the City's counsel argued that the City Council of Forrest City was the policymaker.  Dec. 3, 2021 Hr'g Tr. at 51.

[196] *Atkinson*, 709 F.3d at 1215.

[197] *Id.* (internal quotations omitted) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701,737 (1989)).

[198] *See* Ark. Code Ann. § 14-37-103(a)(1) ("All municipal corporations having over two thousand five hundred (2,500) inhabitants shall be deemed cities of the first class."); Chief Lee Dep. (Doc. 89) at 12:19 (stating that "[w]e have 15,000 people in Forrest City").

[199] The Arkansas General Assembly amended this statute in 2021.  The amendments are immaterial to the issues here.

Amendment violation here.[200]   Mr. Long does not respond to this argument, and the record is devoid of anything resembling a potentially offending City policy.   Mr. Long has thus failed to "set forth specific facts sufficient to raise a genuine issue for trial" on whether a City policy caused him any constitutional harm.[201]   Based on this record, no rational juror could find that any City policy was the animating force behind Mr. Long's prosecution.

Mr. Long's custom claim fares no better.   The City says Mr. Long has not provided evidence upon which a rational juror could conclude that a municipal custom caused his alleged injury.[202]   Mr. Long does not respond to this argument.   And while he provides some evidence of Officer Smith engaging in unconstitutional or unlawful conduct prior to the events in this case, Mr. Long provides no evidence that the Mayor or the City Council members had notice of this prior conduct.   Mr. Long also provides no bad acts of other officers, much less notice to the policymaking officials of such acts.   This is fatal to Mr. Long's custom claim because the Eighth Circuit requires deliberate indifference for such a claim and holds that "[n]otice is the touchstone of deliberate indifference in the context of § 1983 liability."[203]   Because no record evidence could allow a rational juror to conclude that the policymaking official(s) had notice of any prior unconstitutional acts, Mr. Long cannot prevail on his municipal custom claim.[204]

---

[200] Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 53) at 13.

[201] *Haggenmiller*, 837 F.3d at 884.

[202] Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 53) at 13.

[203] *Atkinson*, 709 F.3d at 1216.

[204] It is true that a rational juror could conclude that Officer Smith violated the constitutional rights of two other people before he filed the Affidavit of Arrest.   One instance involved Mr. Long's nephew, Derrick Long, where Officer Smith allegedly violated the Fourth Amendment by entering Derrick Long's home and seizing his dog without probable cause.   A second instance involved Officer Smith's striking of a handcuffed juvenile, which Officer Smith's superiors characterized as an unreasonable use of force, arguably a Fourth Amendment violation.   Ex. 1 to Defs.' Reply to Pl.'s Resp. to Defs.' Mot. for Summ. J. (Doc. 74-1) at 1.   But a rational juror could not conclude that two instances from 2015 and 2016 establish a "continuing, widespread, persistent pattern of unconstitutional misconduct" by Forrest City police officers or Officer Smith.   *Id.*; *see also Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (stating that "two specific prior complaints" and various rumors "pale in comparison to type of prior complaints that [the Eighth Circuit] ha[s] previously held supported a verdict against a city") (collecting cases).   So even if the City Council members or the Mayor knew about these prior incidents, a rational juror could

That leaves Mr. Long's failure-to-train claim.  The City provided evidence of Officer Smith's training.[205]  The City argues that: (1) Mr. Long has not provided evidence that the Mayor or the City Council members knew of and ignored the prior bad acts committed by Officer Smith, and (2) Mr. Long has not provided any evidence of prior bad acts committed by any other police officer, much less evidence of notice to the policymaking officials of such acts.[206]  Mr. Long's contrary argument appears to be that a rational juror could reasonably infer a policymaking official knew of Officer Smith's prior bad acts.  On this premise, Mr. Long then argues that the City "acted with deliberate indifference or tacit authorization of the offensive acts."[207]

The Court agrees with the City.  Mr. Long has provided no evidence upon which a rational juror could conclude that the City Council members or the Mayor (the policymaking officials) had notice of Officer Smith's prior bad acts.  Without such notice, there's no good argument for the need for retraining or additional training.  "Absent some form of notice, the [C]ity cannot be deliberately indifferent to the risk that its training or supervision of [Officer Smith] would result in 'a violation of a particular constitutional . . . right.'"[208]  The Court thus grants summary judgment to the City on all federal claims against it.[209]

---

not find for Mr. Long on his municipal-custom theory.

[205] Ex. 4 to Defs.' Statement of Facts (Doc. 54-4) at 1–50.

[206] Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 53) at 15.

[207] Br. in Supp. of Pl.'s Resp. to Defs.' Mot. for Summ. J. (Doc. 68) at 9 (quoting *Perkins v. Hastings*, 915 F.3d 512, 523 (8th Cir. 2019)).

[208] *Atkinson*, 709 F.3d at 1217 (quoting *Okla. v. Brown*, 520 U.S. 397, 411 (1997)).

[209] As is true of the custom claim, even if a rational juror could conclude that the City Council members or the Mayor knew about Officer Smith's prior bad acts, the Court would still grant summary judgment.  First, two prior bad acts cannot, in the mind of a rational juror, equal a pattern.  *See supra* note 204.  Second, the only federal claim that survives summary judgment is Mr. Long's First Amendment retaliation claim.  A rational juror could conclude that Officer Smith's prior bad acts (the incident with the handcuffed juvenile and the incident with Mr. Long's nephew) make out Fourth Amendment violations.  But no rational juror could conclude that those actions are similar enough to First Amendment retaliation to impose failure-to-train liability on the City.  Stated differently, Mr. Long has not presented any evidence showing that Officer Smith (or other Forrest City Police officers) had previously retaliated for protected speech.  This means no rational juror could find that Mr. Long meets the Supreme Court's standard for failure-to-train liability—a "pattern of *similar* constitutional violations by untrained

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part.  With respect to Mr. Long's claims against Officer Smith in his individual capacity, the following claims survive summary judgment: the retaliatory-inducement-to-prosecute claim under the First Amendment, the "right to remonstrate" claim under the Arkansas Constitution, and the state law malicious prosecution claim.  All the rest of Mr. Long's claims against Officer Smith in his individual capacity are out.  With respect to Mr. Long's claims against Officer Smith in his official capacity, such claims are really claims against Forrest City. Accordingly, they survive or fail to the same extent as the claims expressly made against Forrest City.  With respect to Mr. Long's claims against Forrest City, the First and Fourth Amendment claims are out, and the abuse-of-process claim is out.  The state law malicious prosecution claim and the "right to remonstrate" claim under the Arkansas Constitution survive—mostly because the City did not make any independent summary judgment argument explaining why those claims against it should not advance.

IT IS SO ORDERED this 28th day of March 2022.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

employees." *Thompson*, 563 U.S. at 62 (emphasis added).